MATTER OF O—M—

In DEPORTATION Proceedings

A-11753508

*Decided by Special Inquiry Officer September 12, 1960*
*Approved by Board January 12, 1961*

**Citizenship—Native of Puerto Rico born in 1908 of Spanish parentage.**

(1) Born in Puerto Rico in 1908 of Spanish parents who came to live there prior to the Island's annexation by the United States and who moved to Spain shortly after his birth in 1908, respondent, who, since that time, except for a year's stay in the United States as a tourist (1946–47), had not been in Puerto Rico or other United States territory until his entry on December 21, 1957, when he was admitted as a nonimmigrant visitor; who is recognized by the Spanish government as a citizen of Spain; and who has never filed any declaration or taken any affirmative action to elect or preserve Spanish, Puerto Rican or United States citizenship is held not to have acquired Puerto Rican citizenship at birth in 1908 under section 7 of the Act of April 12, 1900, as a result of the declaration to retain Spanish nationality filed by respondent's father on November 22, 1899, in accordance with the provisions of Article IX of the Treaty of Peace with Spain (proclaimed April 11, 1899), which declaration operated with equal effect to retain the Spanish nationality of respondent's mother, although she herself took no independent action in this respect, both parents thereby continuing to hold Spanish nationality and neither acquiring Puerto Rican citizenship under the 1900 Act.

(2) Respondent did not acquire United States citizenship under section 5 of the Act of March 2, 1917, as he was not within its provisions, not having become a citizen of Puerto Rico under section 7 of the Act of April 12, 1900.

(3) Respondent has not complied with provisions of subsequent Acts relating to acquisition of United States citizenship by natives of Puerto Rico in that (a) he has held Spanish nationality continuously since birth; (b) he has not resided in United States territory on specified statutory dates; and (c) he has not made any declaration in statutory terms to obtain United States citizenship.

CHARGE:

Order: Act of 1952—Section 241(a)(9) [8 U.S.C. 1251(a)(9)]—Failed to comply with conditions of nonimmigrant status.

**BEFORE THE SPECIAL INQUIRY OFFICER**
(September 12, 1960)

**DISCUSSION:** The order to show cause in this case was issued June 25, 1958, alleging deportability on the charge shown in the

188

caption hereof. The initial hearing was held on September 5, 1958, following which the special inquiry officer entered an order on February 10, 1959, in which he concluded that deportability had been established on the charge contained in the order to show cause and ordered the respondent's deportation. The decision was appealed to the Board of Immigration Appeals which, by order dated June 19, 1959, dismissed said appeal. On October 19, 1959, the District Director of the Immigration and Naturalization Service at San Juan, Puerto Rico, made a motion to the Board of Immigration Appeals to reconsider its decision. This motion was made principally because it was felt that, on the basis of the reasoning set forth in the motion, the Board should reconsider its decision and find in favor of the alien (sic) on his appeal. The Board of Immigration Appeals, by order dated December 4, 1959, withdrew the outstanding order of deportation and remanded the case to the special inquiry officer for further proceedings in order to develop that aspect of the case relating to the possibility of acquisitions of Puerto Rican citizenship by the respondent through his mother, and also for the purpose of having the case reconsidered by the special inquiry officer in accordance with the suggestions contained in the motion by the District Director. The motion by the District Director was made not only because he felt that the finding should be made in favor of the respondent but also because certain statements were made in the decision of the special inquiry officer and in that of the Board of Immigration Appeals which were not in accord with views long held by the Immigration and Naturalization Service. The Board stated in its decision of December 4, 1959, that it was not the Board's intention to disturb any administrative practices of long standing unless good cause exists.[1] Reopened hearing was held on May 16, 1960, at the conclusion of which the Service and counsel for the respondent were afforded the opportunity to submit briefs. Such briefs were submitted and the case is ready for decision.

The issue in the case is solely whether alienage of the respondent has been established. If it has been established, the respondent is deportable.

The evidence in the case does not appear to be conflicting. The issue is purely one of law.

The evidence reflects that the respondent was born in Puerto Rico during October 1908, the son of J—O— and L—M—. The respondent testified that his parents were married by proxy and that thereafter his mother came to Puerto Rico to reside with his father prior to the annexation of Puerto Rico. Both of respondent's parents were born in Spain. The respondent's father, on November 22,

---

[1] The Board also directed that the case be certified to it for final decision.

1899, in San Juan, Puerto Rico, executed a "Declaration of Nationality in Accordance with the Provisions of Article IX of the Treaty of Peace Between the United States and Spain" in which he stated that he is a native of the Spanish Peninsula, a Spanish subject, married to L—, and that he wishes to preserve fidelity to the Spanish Crown. In that declaration he named five of his children, the older two aged thirteen and fourteen, born in Spain, and the younger three aged three months to six years, born in Puerto Rico. The respondent testified that when he was about six or eight months old, either in the latter part of 1908 or early 1909, the family moved to Spain and that with the exception of a period of one year commencing in July 1946 the respondent was not in Puerto Rico or American territory until his last entry into the United States on December 21, 1957, at which time he entered at the port of Miami, Florida, and was admitted as a nonimmigrant for pleasure until June 21, 1958. He has been employed as an art critic at a salary of $200 a month commencing prior to the time the period of his admission expired. The one year during which he was in the United States commencing in July 1946 was a period he spent in New York as a tourist. The last entry of the respondent into the United States took place following his departure from Cuba (where he lived from 1951 to 1957) for this country. Upon his arrival in the United States he presented a Cuban passport with a nonimmigrant visitor's visa and a Form I-94A, which shows birth at Havana, Cuba. It also appears that at the time of his arrival he was in possession of a Spanish passport showing birth in San Juan, Puerto Rico, in October 1910, and a certificate of nationality issued by the Consul General of Spain in New York on November 6, 1946, showing the same date and place of birth. Whether the respondent was born in 1908 or 1910 is immaterial to the conclusion in this case.

The evidence shows clearly that not only was the respondent's father born in Spain but that his mother was born there too, and his testimony indicates that their marriage took place in 1889. He stated that he, the respondent, was recognized by the Spanish Government as a citizen of Spain.

There is no evidence that the respondent's mother ever filed a declaration of nationality in accordance with the provisions of Article IX of the treaty, such as was filed by the respondent's father. Exhibit R-1 is a certificate stating that the records of the Department of State of Puerto Rico do not show that any declaration was filed by L—M—G— to preserve her allegiance to the Crown of Spain. The respondent testified that he never filed any declaration or took any affirmative action to elect, choose or preserve Puerto Rican, American, or Spanish nationality.

The reason given by the respondent for entering the United

States with a Cuban passport is not material to the decision in this case.

Only two further pieces of evidence need be mentioned. The first is a baptismal certificate showing the baptism of E—O— on February 16, 1909, in San Juan, with birth having taken place at San Juan, October 12, 1908, and that the person baptized was the son of J—O— and L—M—, both of Puerto Rico. Exhibit R–3b is a certificate from the Bureau of Vital Statistics, Department of Health, Puerto Rico, showing that a search of the books from October 12, 1904 to 1915, failed to disclose the registration of the birth of E—O—M. This negative certificate was issued to the respondent May 20, 1960.

Respondent is married to a citizen of Cuba. His wife resides in Cuba.

## THE GOVERNMENT'S PRESENT CONTENTION

In its brief, dated June 13, 1960, filed after the conclusion of the reopened hearing, the Service argued that the respondent is an alien and subject to deportation and asserted in connection with the question of alienage that:

(1) Respondent's father's declaration to preserve Spanish allegiance was effective as a declaration to preserve the Spanish nationality of the respondent's mother as well, even though she took no independent action in that respect;

(2) Section 7 of the Act of April 12, 1900 did not confer Puerto Rican citizenship on the respondent because he was neither residing in Puerto Rico on April 11, 1899 (having been born in 1908), and because he could not take Puerto Rican citizenship through either of his parents because neither of his parents had Puerto Rican citizenship as they had elected to retain Spanish nationality;

(3) As the respondent did not become a citizen of Puerto Rico under the Act of April 12, 1900, he did not become a citizen of the United States under the provisions of section 5 of the Act of March 2, 1917;

(4) The respondent became a Spanish subject at birth through his parents.

## RESPONDENT'S PRESENT CONTENTION

The respondent, through his counsel, contends that he became a citizen of Puerto Rico through his father under the Act of April 12, 1900, and a citizen of the United States under the provisions of section 5 of the Act of March 2, 1917. Counsel also asserts that the respondent's case should be governed by the determination made by

the Department of State that the respondent's brother, G—, was a citizen of the United States.

## GENERAL STATEMENTS

(1) The civil rights and political status, which include citizenship, of native inhabitants of Puerto Rico are solely those which are determined by Congress. In other words, native inhabitants of Puerto Rico acquire no citizenship status in Puerto Rico or the United States solely by virtue of the treaty between the United States and Spain or solely by virtue of residence in Puerto Rico. Their citizenship status in Puerto Rico or in the United States is only that conferred upon them by Congress. This principle was adequately set forth by the Supreme Court of the United States in *Downes* v. *Bidwell*, 182 U.S. 244 (1901), where, at page 279, the court stated as follows:

> We are also of opinion that the power to acquire territory by treaty implies not only the power to govern such territory, but to prescribe upon what terms the United States will receive its inhabitants, and what their status shall be in what Chief Justice Marshall termed the "American Empire." There seems to be no middle ground between this position and the doctrine that if their inhabitants do not become, immediately upon annexation, citizens of the United States, their children thereafter born, whether savages or civilized, are such, and entitled to all the rights, privileges, and immunities of citizens. If such be their status, the consequences will be extremely serious. Indeed, it is doubtful if Congress would ever assent to the annexation of territory upon the condition that its inhabitants, however foreign they may be to our habits, traditions, and modes of life, shall become at once citizens of the United States. In all its treaties hitherto the treaty-making power has made special provision for this subject; * * * in the case of Porto Rico and the Philippines, "that the civil rights and political *status* of the native inhabitants * * * shall be determined by Congress." In all these cases there is an implied denial of the right of the inhabitants to American citizenship until Congress by further action shall signify its assent thereto.

(2) In a deportation case the Government has the burden of establishing alienage.

(3) Because of the order of December 4, 1959, by the Board of Immigration Appeals, I am not bound by the order of February 10, 1959, by the special inquiry officer nor by the order of June 19, 1959, by the said Board.

(4) A clear understanding of the applicable legal principles would be difficult without having, as part of this opinion, the text of various matters referred to herein. For this reason, there are appended hereto and hereby made a part of this opinion, the following:

  (a) Appendix A—Article IX of the Treaty Between the United States and Spain, proclaimed April 11, 1899;
  (b) Appendix B—Section 7 of the Act of April 12, 1900;

192

(c) Appendix C—Section 5 of the Act of March 2, 1917, as amended;

(d) Appendix D—The text of Immigration and Naturalization Service General Order Number 213, dated January 29, 1935, dealing with the administrative interpretation relating to citizenship of natives or inhabitants of Puerto Rico;

(e) Appendix E—Section 202, Nationality Act of 1940;

(f) Appendix F—Section 302, Immigration and Nationality Act.

## QUESTIONS RAISED IN THIS CASE BUT NOT NECESSARY TO BE DISPOSED OF AND NOT DISPOSED OF BECAUSE OF THE CONCLUSIONS REACHED HEREIN

(1) Whether a person who acquired Puerto Rican citizenship under section 7 of the Act of April 12, 1900 was required to be residing in Puerto Rico on March 2, 1917, in order to acquire United States citizenship under the provisions of section 5 of the Act of March 2, 1917. I may state, however, by way of *obiter dictum* that it is my conclusion that such a question, where pertinent, must be answered in the negative.

(2) Whether Puerto Rican citizenship could be obtained by virtue of the provisions of section 7 of the Act of April 12, 1900 (by an individual born in 1908 in Puerto Rico) through a person's mother, a native of the Spanish Peninsula, who herself might have acquired Puerto Rican citizenship under section 7 of the Act of April 12, 1900. By way of *obiter dictum*, it is stated that it is my view that this question must be answered in the affirmative in cases where the issue becomes pertinent.

## DID RESPONDENT GAIN PUERTO RICAN CITIZENSHIP AND/OR UNITED STATES CITIZENSHIP THROUGH HIS FATHER?

The respondent's father was born in Spain. Under the provisions of Article I(1) of the Spanish Constitution the father was born a Spanish citizen. Flournoy and Hudson, *A Collection of Nationality Laws*, p. 526, and H. Doc. No. 326, 59th Congress, 2d Session, p. 510. There is no evidence that he ever lost his Spanish citizenship. On the contrary, it appears from the evidence that he retained his Spanish citizenship. When the United States acquired Puerto Rico from Spain, Article IX of the treaty with that country proclaimed on April 11, 1899 (see Appendix A) made provision for Spanish subjects who were natives of the Peninsula residing in Puerto Rico to preserve their allegiance to the Crown of Spain by

193

making a declaration of their decision to preserve their allegiance to the Crown of Spain within a year from the date of the exchange of ratifications of the treaty. It was further provided in Article IX that in default of such declaration they shall be held to have renounced allegiance to the Crown of Spain and to have adopted the nationality of the territory in which they now reside. The term "Peninsula," as used in Article IX of the treaty, included Spain but obviously did not include Puerto Rico. The respondent's father did preserve his allegiance to the Crown of Spain in accordance with the provisions of the treaty by making the required declaration on November 22, 1899. Thereafter when Congress enacted the Act of April 12, 1900, section 7 thereof conferred Puerto Rican citizenship on certain people but two things were necessary: "(1) that the applicant was a Spanish subject, native of the Peninsula, or a Spanish subject, native inhabitant of Porto Rico on April 11, 1899, or was born of such a person subsequent thereto; (2) that the applicant must have resided in Porto Rico on April 11, 1899, and have continued to reside therein until the date when the act of Congress mentioned went into effect, April 12, 1900, or have been born subsequent to the date of the annexation, April 11, 1899, to a person who was on that date a Spanish subject, native of the Peninsula or a native inhabitant of Porto Rico, *and who acquired American nationality under the treaty and the statute*" (emphasis supplied). III Hackworth, *Digest of International Law*, pp. 141, 142. From this it will be seen that the respondent's father would have acquired Puerto Rican citizenship on April 12, 1900, except for the fact that section 7 of that Act removed him from the classes of persons who acquired Puerto Rican citizenship by virtue of the exception which states "except such as shall have elected to preserve their allegiance to the Crown of Spain on or before the eleventh day of April nineteen hundred, in accordance with the provisions of the treaty * * *." The respondent's father, therefore, did not acquire Puerto Rican citizenship under the Act of April 12, 1900, and there is no evidence that he acquired it in any other way thereafter.

We now come to the crucial point in the argument advanced by respondent's attorney, namely, that the respondent acquired Puerto Rican citizenship under section 7 because, he alleged, the respondent was a child born subsequent to April 11, 1899, to an inhabitant of Puerto Rico who was a Spanish subject on that date and residing in Puerto Rico from that date to April 12, 1900.

As pointed out above by the emphasized portion of that part of the essential requisites to acquire Puerto Rican citizenship, Hackworth, who, at the time of preparing his monumental text was legal advisor for the Department of State, was of the opinion that for a

person born in Puerto Rico, as, for example, this respondent was in 1908, to have acquired Puerto Rican citizenship through his father, that father must have been one who acquired American nationality under the treaty with Spain and section 7 of the Act of April 12, 1900. We have seen, however, that the respondent's father did not acquire Puerto Rican citizenship under the 1900 Act because he had, prior to the effective date of that Act, made a declaration to preserve his allegiance to the Crown of Spain. Respondent's counsel, therefore, reads that part of section 7 of the Act of April 12, 1900 which provides "except such as shall have elected to preserve their allegiance to the Crown of Spain * * *" as affecting only the individual who made the election insofar as the right of that individual to acquire Puerto Rican citizenship is concerned. What he failed to do was to accord to this quoted language in section 7 its true meaning, namely, that it was a definitive description of a class of persons who did not acquire Puerto Rican citizenship under section 7 of the Act of April 12, 1900 and, therefore, the phrase "and their children born subsequent thereto" in section 7 actually related to the children of fathers (and perhaps mothers) who were not of the so defined excepted class. To state it another way, children born in Puerto Rico after April 11, 1899, in order to acquire Puerto Rican citizenship under section 7 of the Act of April 12, 1900 had to be children of a father who himself acquired Puerto Rican citizenship under that Act. That is the only kind of father discussed in section 7. This interpretation is borne out by the provisions of section 1 of General Order 213 of the Immigration and Naturalization Service (see Appendix D) which interprets the Act of April 12, 1900 as conferring Puerto Rican citizenship upon a child born subsequent to April 11, 1899, to a parent who acquired Puerto Rican citizenship in accordance with other provisions of section 1 of that General Order, which other provisions excluded a man who made a declaration that he elected to preserve his allegiance to Spain.

It is axiomatic that the interpretations of a statute fairly susceptible of different constructions, by an agency of the Government charged with executing it, are entitled to great respect. *McLaren* v. *Fleischer*, 256 U.S. 477 (1921). It is my view that the Act of April 12, 1900 is not fairly susceptible of different constructions but, even if it were, Hackworth, the legal advisor for the State Department, and the Immigration and Naturalization Service have interpreted section 7 of the Act of April 12, 1900 not as respondent's counsel would have us interpret it, but rather as set forth above. As we shall see hereafter, the Secretary of Labor and the Secretary of the Interior also interpreted the law as did the Department of State and the Immigration and Naturalization Service.

Reliance need not be put merely upon Hackworth and General Order Number 213. The United States District Court for the District of Puerto Rico had before it in 1957 a declaratory judgment action pursuant to the provisions of section 360(a) of the Immigration and Nationality Act in which the facts were as closely akin to those in the instant case as can be hoped to be found. *Conrad* v. *Dulles*, 155 F. Supp. 542. In that case the plaintiff was born in Puerto Rico in September 1906. The plaintiff's father resided in Puerto Rico on April 11, 1899, but was at plaintiff's birth a Spanish subject because he had, on or before April 11, 1900, elected to preserve allegiance to the Crown of Spain in accordance with Article IX of the treaty between the United States and Spain. The court found that the subject was not a citizen of the United States under section 7 of the Act of April 12, 1900 and section 5 of the Act of March 2, 1917.

This leads us to the question which has thus far not been treated, namely, whether respondent in the instant case acquired United States citizenship through his father under the provisions of the Act of March 2, 1917, as amended. The case of *Conrad* v. *Dulles*, *supra*, says such a person did not acquire United States citizenship under that Act. Section 5 of the Act of March 2, 1917 confers United States citizenship upon citizens of Puerto Rico as defined by section 7 of the Act of April 12, 1900, and all natives of Puerto Rico who were temporarily absent from that island on April 11, 1899, and since have returned and are permanently residing on that island and are not citizens of any foreign country. The respondent in the instant case did not become a citizen of Puerto Rico through his father under the Act of April 12, 1900, as has already been pointed out, and consequently did not acquire United States citizenship through his father under the provisions of section 5 of the Act of March 2, 1917. In Hackworth, *supra*, p. 144, it is stated "Now, then, if * * * never obtained the condition of citizen of Porto Rico, it seems to be clear that he was not made a citizen of the United States by the provisions of Section 5 * * *." While the individual in that case was born in Puerto Rico in 1879 of a French father, it nevertheless makes clear that the instant respondent could not have acquired United States citizenship through his father because he, the respondent, never acquired Puerto Rican citizenship (see also General Order 213, Appendix D).

Additionally, the Service points out on page 4 of its brief that section 5c was added on May 16, 1938, to the Act of March 2, 1917, because Congress sought to afford relief, as stated by the Secretary of Labor,

to persons who were born in Puerto Rico on or after April 11, 1899, of fathers who preserved their allegiance to Spain under the treaty of peace with Spain.

Persons born of such fathers are not citizens of the United States, in the absence of their having taken formal proceedings therefor.

This purpose of section 5c of the Act of March 2, 1917, as amended, was thus gleaned from a statement of the Secretary of Labor set forth in Senate Report Number 1679, accompanying H.R. 4275, 75th Congress. Similarly, in the same report (p. 5 of Service brief) the Acting Secretary of the Interior, in response to an inquiry from the Chairman of the House Committee on Insular Affairs to the Director, Division of Territories and Island Possessions, is quoted in part as stating:

The primary purpose is to admit to United States citizenship a limited class of Puerto Ricans, who, through ignorance of the law or misunderstanding, failed to take advantage of the opportunity to become such citizens under sections 5, 5a, and 5b of the Organic Act for that island, the Act of March 2, 1917 * * * and of June 27, 1934 * * *.

About 6,000 residents of Puerto Rico are involved, concerning whose status there appears to have been considerable popular confusion and misunderstanding. They are descendants, born in the island since its cession to the United States, of Spanish subjects who elected, on or before April 11, 1900, to retain their allegiance to the Crown of Spain in accordance with Article IX of the Treaty of Peace which terminated the Spanish-American War. The descendants of Spanish subjects who so elected are not citizens of the United States, although born and residing in Puerto Rico, unless naturalized, or unless, on or before March 4, 1928 (or else within one year after reaching their majority), they or their ancestors filed declarations, as provided in sections 5 and 5a of the Organic Act, availing themselves of the privilege of becoming American citizens.

Whether the respondent acquired United States citizenship under that Act in his own right will be treated in another portion of this opinion. It is sufficient at this point to state that under the amendment to that Act and under the Nationality Act of 1940 and the Immigration and Nationality Act the respondent could not acquire United States citizenship through his father.

A second contention raised by respondent's attorney is that the respondent's situation is the same as that of respondent's brother, G—, who was held to have acquired United States citizenship. This is not a valid argument. G— was born in San Juan, Puerto Rico, July 10, 1898, and resided there until subsequent to April 12, 1900, and was, therefore, *himself* (and not through his father) directly within the provisions of section 7 of the Act of April 12, 1900, and thus acquired Puerto Rican citizenship in his own right. He was an infant and not a native of the Peninsula, and could not as a matter of law make a declaration to preserve Spanish allegiance. It is also almost axiomatic at this late date that the father's declaration to preserve his (the father's) allegiance to the Crown of Spain did not serve to preserve Spanish allegiance for a child born in Puerto Rico in 1898, residing in Puerto Rico at the time of the cession of

197

those islands, even though that child's name is mentioned in the father's declaration. See Hackworth, *supra*, pp. 142, 143. G— acquired Puerto Rican citizenship; the respondent did not.

## *DID RESPONDENT GAIN PUERTO RICAN CITIZENSHIP AND/OR UNITED STATES CITIZENSHIP THROUGH HIS MOTHER?*

We have just seen that the respondent did not gain Puerto Rican and/or United States citizenship through his father. If he could have gained Puerto Rican citizenship and/or American citizenship through his mother pursuant to the 1900 and 1917 Acts, it would be only if his mother became a Puerto Rican citizen under section 7 of the 1900 Act. His mother did not make a separate declaration to retain allegiance to the Spanish Crown. The question, therefore, is whether the declaration of allegiance made by the respondent's father had like effect upon respondent's mother. If it did, then she did retain allegiance to the Spanish Crown and did not acquire Puerto Rican citizenship under section 7 of the Act of April 12, 1900.

Authorities on this point are scarce. The brief of June 13, 1960, filed by the Service argues that since the respondent's mother was also a native of the Spanish Peninsula, with the right to make such a declaration to retain Spanish allegiance, her husband's declaration was effective as a declaration to preserve her Spanish nationality even though she herself took no independent action in that respect. That brief points out that the position of the Service on that point is more fully expounded in the case of *Maria Marroig Vda. de Frontera* (petition for naturalization No. 4738, filed in the District Court of the United States for Puerto Rico, on January 14, 1947). The opinion of the Service, a copy of which is attached to the Service brief, is dated October 20, 1947, and bears file Number 2849—P—4738. The arguments in that opinion are persuasive. It will not be necessary for me to set out those arguments in this opinion because the District Court of the United States for the District of Puerto Rico in the *Frontera* case handed down a decision on December 20, 1948, in which the court concluded (Mrs. Frontera was in the same position as the respondent's mother so far as the material facts are concerned) that the declaration to retain Spanish nationality executed by petitioner's husband also operated to preserve the petitioner's Spanish nationality. The court pointed out that at the time of the Treaty of Peace between the United States and Spain all countries recognized the principle that the nationality of a woman on marriage merged in that of her husband and that she lost her own nationality and acquired his. The court then pointed out that under Article 22 of the Spanish Civil Code of 1889 "A married woman follows the condition and nationality of her husband." The court's

reasoning continues by adding that it should be borne in mind that petitioner was a native of the Spanish Peninsula and, therefore, eligible to retain her Spanish nationality under the provisions of Article IX of the Treaty; that she was admitted to Puerto Rico as a Spanish subject in 1910, obtained a Spanish passport in 1939, and reentered the United States in 1939 under a special provision of law relating to persons who had retained Spanish nationality under the Treaty with Spain, and that the petitioner was also recognized as a Spanish subject by Spain. The court, however, finally concludes as follows: "Under the authorities heretofore cited (some of which were cited in the Service opinion), the Court holds that at the time of the Treaty between the United States and Spain, petitioner's nationality was merged with that of her husband and, therefore, petitioner remained a subject of the Spanish Crown" (parenthetical clause added).

In view of this holding by the court in the *Frontera* petition matter and in view of the cogent reasoning advanced in the Service's opinion in that matter, and particularly in the absence of authorities to the contrary, I conclude that the respondent's father's declaration to retain allegiance to the Spanish Crown had the same legal effect on his wife that her own declaration of allegiance to the Spanish Crown would have had had she been able to make, and had she made, a declaration of allegiance. This being the situation, the respondent's mother did not acquire Puerto Rican citizenship under section 7 of the 1900 Act. The respondent, therefore, did not acquire Puerto Rican citizenship at his birth in 1908 through his mother. There is no evidence that he in any way acquired United States citizenship under any act through his mother. As a matter of fact, it appears rather clear that his mother is at the present time recognized in Spain as a Spanish citizen and that she at no time took any affirmative action in accordance with the requirements of the applicable statutes to acquire United States citizenship.

## DID RESPONDENT ACQUIRE PUERTO RICAN AND/OR UNITED STATES CITIZENSHIP IN HIS OWN RIGHT?

We have just seen that the respondent did not acquire Puerto Rican and/or American citizenship through his father or his mother. There is nothing in section 7 of the Act of April 12, 1900, which would have conferred Puerto Rican citizenship on the respondent in his own right because in order for a person to acquire Puerto Rican citizenship in his own right under that section of law it would have been necessary for the person to have been a Spanish subject, a native inhabitant of Puerto Rico on April 11, 1899, and to have resided there on that date and have continued to reside there until April 12, 1900. The respondent was born in 1908 and, therefore, did not

acquire Puerto Rican citizenship in his own right under section 7 of the 1900 Act.

When the respondent's father retained his allegiance to the Spanish Crown he retained, of course, his Spanish citizenship. Under Article I(2) of the Constitution of Spain "children of a Spanish father or mother, although born out of Spain" are Spaniards. H. Doc. No. 326, 59th Congress, 2d Session, p. 510. (It is noted that in Flournoy and Hudson, *A Collection of Nationality Laws*, p. 526, Article I(2) of the Spanish Constitution is translated as "The Children of Spanish parents, although born outside Spain," are Spaniards.) Furthermore, Article 17(2) of the Spanish Civil Code of 1889 provides that "The children of a Spanish father or Spanish mother, although born outside Spain," are Spaniards (II. Doc. No. 326, *supra*, and Flournoy and Hudson, *supra*, p. 537). It is, therefore, clear that when the respondent was born in 1908 he acquired Spanish nationality through his parents. At this point it is well to mention that respondent's counsel in his brief, dated June 22, 1960, seems to argue that it is inconsistent to hold that the respondent's father's declaration to retain allegiance to the Spanish Crown could have no effect on the respondent and yet the respondent's father's Spanish citizenship would have some effect on the respondent. There is nothing unusual about this situation. There are many instances where the law of the blood (*jus sanguinis*) applies so far as the transmission of citizenship from father to son is concerned. The father's declaration of retention of Spanish allegiance did not deprive the respondent of anything because the respondent was not yet born when the father made the declaration. At the time the respondent was born there was no statute granting him Puerto Rican citizenship or United States citizenship but there was a Spanish law giving him Spanish citizenship. With regard to the brother, G—, who is also mentioned in this connection in the respondent's attorney's brief, G—'s citizenship rested on a different footing; it rested on G—'s own situation because, among other things, G— was born in Puerto Rico prior to the proclamation of the Treaty with Spain.

Other acts of Congress (Act of March 4, 1927, adding section 5a to the Act of March 2, 1917; the Act of June 27, 1934, adding section 5b to the Act of March 2, 1917; and the Act of May 16, 1938, adding section 5c to the Act of March 2, 1917; section 202 of the Nationality Act of 1940, and section 302 of the Immigration and Nationality Act, all set out in the appendices) relate to the acquisition of United States citizenship by natives of Puerto Rico under certain circumstances. All of them, however, require one or more of the following:

    (1) Residence in territory over which the United States exercises sovereignty on dates fixed in the statutes;

    (2) That the individual concerned not be a national of any foreign country;

(3) That a declaration to acquire American citizenship be made in accordance with the terms of the statute.

The respondent at birth was a citizen of Spain and he has apparently continued to be such until the present time. He did not have his residence in United States territory, as required by the various statutes, on the dates mentioned therein, and he has never made a formal declaration to acquire United States citizenship pursuant to the provisions of any of the statutes. He did not acquire Puerto Rican or United States citizenship in his own right.

## CONCLUSION

It is my conclusion that the respondent is an alien. This opinion has been lengthier than it would ordinarily have been but it was felt desirable to cover the area in detail because of the paucity of available material on the subject.

## FINDINGS OF FACT AND CONCLUSION OF LAW

I hereby adopt the allegations and the charge in the order to show cause as my findings of fact and conclusion of law, respectively.

## ELECTION

The respondent, at the initial hearing, elected Cuba as the country to which he wishes to be deported in the event deportation is to take place.

**ORDER:** It is ordered that the respondent be deported from the United States in the manner provided by law on the charge contained in the order to show cause.

*It is further ordered* that this case be certified to the Board of Immigration Appeals for final decision by that Board.

### APPENDIX A

## ARTICLE IX OF THE TREATY OF PEACE BETWEEN THE UNITED STATES AND SPAIN PROCLAIMED APRIL 11, 1899

Spanish subjects, natives of the Peninsula, residing in the territory over which Spain by the present treaty relinquishes or cedes her sovereignty, may remain in such territory or may remove therefrom, retaining in either event all their rights of property, including the right to sell or dispose of such property or its proceeds; and they shall also have the right to carry on their industry, commerce and professions, being subject in respect thereof to such laws as are applicable to other foreigners. In case they remain in the territory they may preserve their allegiance to the Crown of Spain by making, before a court of record, within a year from the date of the exchange of ratifications of this treaty, a declaration of their decision to preserve such alle-

giance; in default of which declaration they shall be held to have renounced it and to have adopted the nationality of the territory in which they may reside.

The civil rights and political status of the native inhabitants of the territories hereby ceded to the United States shall be determined by the Congress. (30 Stat. 1754; Treaty Series No. 343; Malloy, Treaties, II, 1690.)

## APPENDIX B

### SECTION 7 OF THE ACT OF APRIL 12, 1900

Sec. 7. That all inhabitants continuing to reside therein who were Spanish subjects on the eleventh day of April, eighteen hundred and ninety-nine, and then resided in Porto Rico,[1] and their children born subsequent thereto, shall be deemed and held to be citizens of Porto Rico. and as such entitled to the protection of the United States, except such as shall have elected to preserve their allegiance to the Crown of Spain on or before the eleventh day of April nineteen hundred, in accordance with the provisions of the treaty of peace between the United States and Spain entered on the eleventh day of April. eighteen hundred and ninety-nine; and they, together with such citizens of the United States as may reside in Porto Rico, shall constitute a body politic under the name of The People of Porto Rico, with governmental powers as hereinafter conferred, and with power to sue and be sued as such.

## APPENDIX C

### SECTION 5 OF THE ACT OF MARCH 2, 1917, AS AMENDED

Sec. 5. That all citizens of Puerto Rico, as defined by section seven of the Act of April twelfth, nineteen hundred, "temporarily to provide revenues and a civil government for Puerto Rico, and for other purposes," and all natives of Puerto Rico, who were temporarily absent from that island on April eleventh, eighteen hundred and ninety-nine, and have since returned and are permanently residing in that island, and are not citizens of any foreign country, are hereby declared, and shall be deemed and held to be, citizens of the United States: *Provided,* That any person hereinbefore described may retain his present political status by making a declaration, under oath, of his decision to do so within six months of the taking effect of this Act before the district court in the district in which he resides, the declaration to be in form as follows:

"I,                      , being duly sworn, hereby declare my intention not to become a citizen of the United States as provided in the Act of Congress conferring United States citizenship upon citizens of Puerto Rico and certain natives permanently residing in said island."

In the case of any such person who may be absent from the island during said six months the term of this proviso may be availed of by transmitting a declaration, under oath, in the form herein provided within six months of the taking effect of this Act to the executive secretary of Puerto Rico; *And provided further,* That any person who is born in Puerto Rico of an alien parent, and is permanently residing in that island may, if of full age, within six

---

[1] The spelling of "Porto Rico" was changed to "Puerto Rico" by the Act of May 17, 1932 (47 Stat. 148).

202

months of the taking effect of this Act, or if a minor, upon reaching his majority or within one year thereafter, make a sworn declaration of allegiance to the United States before the United States District Court for Puerto Rico, setting forth therein all the facts connected with his or her birth and residence in Puerto Rico and accompanying due proof thereof, and from and after the making of such declaration shall be considered to be a citizen of the United States.

Sec. 5a.[1] That all citizens of the United States who have resided or who shall hereafter reside in the island for one year shall be citizens of Puerto Rico: *Provided*, That persons born in Puerto Rico of alien parents, referred to in the last paragraph of section 5, who did not avail themselves of the privilege granted to them of becoming citizens of the United States, shall have a period of one year from the approval of this Act to make the declaration provided for in the aforesaid section: *And provided further*, That persons who elected to retain the political status of citizens of Puerto Rico may within one year after the passage of this Act become citizens of the United States upon the same terms and in the same manner as is provided for the naturalization of native Puerto Ricans born of foreign parents.

Sec. 5b.[2] All persons born in Puerto Rico on or after April 11, 1899 (whether before or after the effective date of this Act), and not citizens, subjects, or nationals of any foreign power, are hereby declared to be citizens of the United States: *Provided*, That this Act shall not be construed as depriving any person, native of Puerto Rico, of his or her American citizenship heretofore otherwise lawfully acquired by such person; or to extend such citizenship to persons who shall have renounced or lost it under the treaties and/or laws of the United States or who are now residing permanently abroad and are citizens or subjects of a foreign country: *And provided further,*[3] That any woman, native of Puerto Rico and permanently residing therein, who, prior to March 2, 1917, had lost her American nationality by reason of her marriage to an alien eligible to citizenship, or by reason of the loss of the United States citizenship by her husband, may be naturalized under the provisions of section 4 of the Act of September 22, 1922, entitled "An Act relative to the naturalization and citizenship of married women," as amended.

Sec. 5b.[4] (*sic*) Section 404(c) of the Nationality Act of 1940 (U.S.C., Title 8, sec. 804(c)), shall not be applicable to persons who acquired citizenship under the provisions of sections 5 and 5a of this Act.

Sec. 5c.[5] That any person of good character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States, and born in Puerto Rico on or after April 11, 1899, who has continued to reside within the jurisdiction of the United States, whose father elected on or before April 11, 1900, to preserve his allegiance to the Crown of Spain in accordance with the provisions of the treaty of peace between the United States and Spain entered into on April 11, 1899, and who, by reason of misinformation regarding his or her own citizenship status failed within the time limits prescribed by section 5 or section 5a hereof to exer-

---

[1] Added by the Act of March 4, 1927 (44 Stat. 1418).

[2] Added by the Act of June 27, 1934 (48 Stat. 1245). Repealed by the Act of June 27, 1952 (66 Stat. 279).

[3] Second proviso repealed by sec. 504 of the Act of October 14, 1940 (54 Stat. 1173).

[4] Added by the Act of June 25, 1948 (62 Stat. 1015). This amendment is retroactive to October 13, 1945.

[5] Added by the Act of May 16, 1938 (52 Stat. 337). Repealed by sec. 504 of the Act of October 14, 1940 (54 Stat. 1173).

cise the privilege of establishing United States citizenship and has heretofore erroneously but in good faith exercised the rights and privileges and performed the duties of a citizen of the United States, and has not personally sworn allegiance to any foreign government or ruler upon or after attainment of majority, may make a sworn declaration of allegiance to the United States before any United States district court. Such declaration shall set forth facts concerning his or her birth in Puerto Rico, good character, attachment to the principles of the Constitution of the United States, and being well disposed to the good order and happiness of the United States, residence within the jurisdiction of the United States, and misinformation regarding United States citizenship status, and shall be accompanied by proof thereof satisfactory to the court. After making such declaration and submitting such proofs, such person shall be admitted to take the oath of allegiance before the court, and thereupon shall be considered a citizen of the United States.

## APPENDIX D

### TEXT OF GENERAL ORDER NUMBER 213 DATED JANUARY 29, 1935

By virtue of and pursuant to the authority vested in me under Revised Statutes, section 161 (U.S.C., Title 5, sec. 22), and other provisions of law, the following regulations interpreting section 7 of the Act of April 12, 1900 (31 Stat. 79; U.S.C., Title 48, sec. 733); sections 5 and 5a of the Act of March 2, 1917 (39 Stat. 953, U.S.C., Title 8, sec. 5; 44 Stat. 1418–1419, U.S.C., Title 8, sec. 5a); and section 5b of said Act of March 2, 1917, as added by Act of June 27, 1934 (48 Stat. 1245) are prescribed for the guidance of officers and employees of the Immigration and Naturalization Service:

#### Puerto Rican Citizenship Under the Act of April 12, 1900

Sec. 1. Under the provisions of section 7 of the Act of April 12, 1900 (31 Stat. 79, U.S.C., Title 48, sec. 733)—

(a) An inhabitant of Puerto Rico who was a Spanish subject on April 11, 1899, and continued to reside in Puerto Rico until April 12, 1900, became on April 12, 1900, a citizen of Puerto Rico unless on or before April 11, 1900, he made a declaration before a court of record that he had elected to preserve his allegiance to Spain;

(b) A child born at any time subsequent to April 11, 1899, to a parent who acquired Puerto Rican citizenship in accordance with the preceding subsection (a) was himself vested with Puerto Rican citizenship.

#### United States Citizenship Under the Act of March 2, 1917

Sec. 2. Under the provisions of sections 5 and 5a of the Act of March 2, 1917 (39 Stat. 953, U.S.C., Title 8, sec. 5; 44 Stat. 1418–1419, U.S.C., Title 8, sec. 5a), the following are citizens of the United States:

(a) A person who on March 2, 1917, was a citizen of Puerto Rico as defined in section 7 of the Act of April 12, 1900, and section 1 of these regulations; and who did not within six months after March 1, 1917, make a declaration under oath before the district court in the district in which he resided, retaining the political status he then had;

(b) A native of Puerto Rico who was temporarily absent from that island on April 11, 1899, who had returned and was permanently residing therein on

March 2, 1917, who was not on March 2, 1917, a citizen of any foreign country and who within six months after March 1, 1917, did not make a declaration under oath before the district court in the district in which he resided, retaining the political status he then had;

(c) A native of Puerto Rico, born of an alien parent, who was permanently residing in that island on March 2, 1917, and who, within six months after March 1, 1917, or within one year after attaining the age of twenty-one if he was not twenty-one years of age on March 2, 1917, or within one year after March 3, 1927 (regardless of his age), made a sworn declaration of allegiance to the United States before the United States District Court for Puerto Rico; and

(d) A person who elected to retain the political status of a citizen of Puerto Rico and who within one year after March 3, 1927, made a sworn declaration of allegiance to the United States before the United States District Court for Puerto Rico.

## *United States Citizenship Under the Act of June 27, 1934*

Sec. 3. A person born in Puerto Rico on or after April 11, 1899, who was not a citizen of the United States on June 27, 1934, became a citizen on June 27, 1934, unless—

(a) He was on that date a citizen, subject, or national of any foreign power; or

(b) Prior to June 27, 1934, he had renounced or lost United States citizenship under the treaties and/or laws of the United States; or

(c) He was on that date residing permanently abroad and was a citizen or subject of a foreign country.

## APPENDIX E

## *SECTION 202 OF THE NATIONALITY ACT OF 1940*

Sec. 202. All persons born in Puerto Rico on or after April 11, 1899, subject to the jurisdiction of the United States, residing on the effective date of this Act in Puerto Rico or other territory over which the United States exercises rights of sovereignty and not citizens of the United States under any other Act, are hereby declared to be citizens of the United States.

## APPENDIX F

## *SECTION 302 OF THE IMMIGRATION AND NATIONALITY ACT*

Sec. 302. All persons born in Puerto Rico on or after April 11, 1899, and prior to January 13, 1941, subject to the jurisdiction of the United States, residing on January 13, 1941, in Puerto Rico or other territory over which the United States exercises rights of sovereignty and not citizens of the United States under any other Act, are hereby declared to be citizens of the United States as of January 13, 1941. All persons born in Puerto Rico on or after January 13, 1941, and subject to the jurisdiction of the United States, are citizens of the United States at birth.

## BEFORE THE BOARD
### (January 12, 1961)

**DISCUSSION:** When this case was first before us on June 19, 1959, we dismissed respondent's appeal from an order of a special inquiry officer entered on February 9, in which it was concluded that alienage had been established and that respondent was deportable on the charge contained in the order to show cause. When we last considered this case on December 4, 1959, on motion of the District Director, we remanded the case to the special inquiry officer for further proceedings and consideration with respect to the possibility of respondent having acquired Puerto Rican citizenship. On September 12, 1960, the special inquiry officer entered an order finding that the respondent is an alien and ordering that respondent be deported from the United States on the charge contained in the order to show cause. This case is before us on certification for a final decision as directed in our aforementioned order of December 4, 1959.

The respondent testified that he was born in Puerto Rico in October 1908. A certificate from the Bureau of Vital Statistics, Department of Health, Puerto Rico, issued to the respondent on May 20, 1960, shows that a search of the books from October 12, 1904 to 1915, failed to disclose the registration of the birth of E—O—M—. In support of his claimed birth in Puerto Rico, respondent did present a baptismal certificate showing the baptism of E—O—, the son of J—O— and L—M—, both of Puerto Rico, on February 16, 1909, in San Juan, with birth having taken place at San Juan on October 12, 1908. Respondent testified that his parents were married by proxy in about 1889 and he supposes his mother came to Puerto Rico upon being married. Respondent testified that both his mother and father were born in Spain. The respondent's father, in November 1899, in San Juan, Puerto Rico, executed a "declaration of nationality in accordance with the provisions of Article IX of the Treaty of Peace between the United States and Spain" in which he stated that he is a native of the Spanish Peninsula, a Spanish subject, married to L—, and that he wishes to preserve fidelity to the Spanish Crown. He named five children in the declaration, the older two age 13 and 14, born in Spain, and the younger three, age 3 months to six years, born in Puerto Rico. Respondent testified that when he was about six or eight months old, in the latter part of 1908 or early 1909, his family moved to Spain and that with the exception of a period of one year commencing in July 1946 he was not in Puerto Rico or American territory until his last entry into the United States on December 21, 1957, when he entered at the port of Miami and was admitted as a nonimmigrant for pleasure at the port of Miami until June 21, 1958.

Counsel excepts to the conclusion of the special inquiry officer

206

that respondent was never a citizen of Puerto Rico or a citizen of the United States. Counsel argues that respondent should be considered a citizen of Puerto Rico according to section 7 of the Act of April 12, 1900, and as such entitled to become an American citizen by reason of the provisions of section 5 of the Act of March 2, 1917. Counsel points out that although respondent's brother G—, who was born in Puerto Rico before 1899, was included in the declaration of the father preserving allegiance to Spain, it has nevertheless been held that G— is a citizen of the United States by reason of birth in Puerto Rico, the son of Spanish subjects.

The sole issue in this case is that of nationality since respondent is clearly deportable on the charge contained in the order to show cause if alienage has been established. He accepted employment as an art critic at a salary of $200 a month before the time that the period of his admission expired.

Article IX of the Treaty with Spain proclaimed on April 11, 1899, and which is applicable to the acquisition of Puerto Rico from Spain, provided that Spanish subjects who were natives of the Peninsula and were residing in Puerto Rico could preserve their allegiance to the Crown of Spain by making, before a court of record, within a year from the date of the exchange of ratifications of the Treaty, a declaration of their decision to preserve such allegiance and that in default of such a declaration they shall have been held to renounce allegiance to Spain and to have adopted the nationality of the territory in which they resided. The Treaty further provided that the civil rights and political status of the native inhabitants of the territory "shall be determined by the Congress."

Section 7, Act of April 12, 1900, mentioned by counsel, provides in part: "That all inhabitants continuing to reside therein who were Spanish subjects on the eleventh day of April, eighteen hundred and ninety-nine, and then resided in Porto Rico, and their children born subsequent thereto, shall be deemed and held to be citizens of Porto Rico, and as such entitled to the protection of the United States, *except such as shall have elected to preserve* their allegiance to the Crown of Spain on or before the eleventh day of April nineteen hundred, in accordance with the provisions of the Treaty of Peace between the United States and Spain entered into on the eleventh day of April, eighteen hundred and ninety-nine . . ." (Emphasis supplied.)

Respondent's father, having been born in Spain, was a citizen of that country (Article I(1) of the Spanish Constitution, Flournoy and Hudson, *Nationality Laws*, p. 526). By filing the required declaration on November 22, 1899, respondent's father preserved his Spanish citizenship. Hence, he did not become a citizen of Puerto Rico under section 7 of the Act of April 12, 1900, since that law

207

excepted from the provisions of Puerto Rican citizenship those who had elected to preserve their allegiance to the Crown of Spain on or before the 11th day of April 1900. Consequently, neither did the subject acquire Puerto Rican citizenship under section 7 of the Act of April 12, 1900, since Puerto Rican citizenship was bestowed under that law on the children born subsequent to April 11, 1899, of former Spanish subjects who had not elected to preserve their Spanish citizenship. The appeal will be dismissed and the order of the special inquiry officer directing deportation approved.

ORDER: It is ordered that the appeal be dismissed and that the order of deportation be and the same is hereby approved.